LORI ANN FLETCHER, Plaintiff-Appellant, *v.* JAMES R. FLETCHER, Defendant-Appellee

NO. 7588

FC-D NO. 7616

OCTOBER 5, 1981

HAYASHI, C.J., BURNS, J., AND CIRCUIT JUDGE CHUN
IN PLACE OF ASSOCIATE JUDGE PADGETT, DISQUALIFIED

OPINION OF THE COURT BY BURNS, J.

In this divorce case, Plaintiff Lori Ann Fletcher (Wife) appeals the lower court's award to her of $2,557.75 as her share of the retail

business which she jointly owned and operated with Defendant James R. Fletcher (Husband). We reverse.

On August 25, 1975, Husband and Wife, then unmarried but living together, purchased the Economy Store[1] in Paia, Maui, for $25,000.00, payable without interest in twenty-six (26) monthly installments. The contract allocated the purchase price as follows: inventory $15,000.00, Dodge Ramcharger $5,000.00, and equipment $5,000.00. The parties also acquired for a term ending February 29, 1980, a sublease of the store's premises and an adjoining two-bedroom, one-bathroom residence at a rental of $500.00 per month through February 28, 1978, and $550.00 per month through February 29, 1980.

Both parties worked in the store. On September 5, 1975, they formed a fifty-fifty[2] partnership to operate it. At some point in time, they borrowed $7,000.00 from Husband's mother, of which $5,000.00 went into the partnership and $2,000.00 went for personal expenses. They made no payments on the debt.

On November 20, 1976, the parties married.

According to Husband, Wife visited her family in Kauai sometime around October 1, 1978. She stayed longer than Husband wanted her to. When she returned some eight days later, he refused to pick her up and refused her entry into the residence. The next day she picked up her things and never returned to the house or the store.

She filed for divorce on December 6, 1978. Trial was held on July 3, 1979.

The parties agreed that Wife should be awarded a 1969 Volkswagen, a typewriter, and diving equipment; and that Husband should be awarded a 1969 Volkswagen,[3] a 1974 Yamaha motorcycle,[4] the household goods and furniture, and the partnership subject to its debts.[5]

---

[1] A retail store selling groceries and alcoholic beverages.

[2] However, the partnership articles specified "that in the event the partners fail to agree with respect to the conduct, management and operation of the business, the decision of James Rodney Fletcher shall prevail. . . ."

[3] [4] Husband owned these items prior to marriage.

[5] The agreement awarded a 1975 Dodge Ramcharger to Husband but it was owned by the partnership.

The trial involved Wife's request for (1) the court to appoint an appraiser to value the partnership; (2) one-half of the "fair net value" of the partnership; (3) one-half of the amounts which Husband drew out of the partnership since separation; (4) $200.00 per month alimony until completion of her education; and (5) $500.00 attorney's fees plus costs.

The court denied Wife's requests for appointment of an appraiser and for alimony, awarded Wife $300.00 for attorney's fees and $2,557.75 for her interest in the partnership, ordered Husband to pay the $2,000.00 owed to his mother, and equally divided the 1978 state and federal tax refunds.

Wife contends that she should have been awarded more than $2,557.75 for her interest in the partnership.

In a divorce case pursuant to Hawaii Revised Statutes (HRS) § 580-47, before the family court can justly and equitably divide and distribute the estate of the parties and allocate the responsibility for the payment of the debts of the parties, it must first identify all of the assets and debts in the estate and then it must determine their values. This may be done by stipulation of the parties or by findings of fact based on the evidence.

In this case the assets and debts have all been identified. Valuation was the issue. On that subject the court stated in conclusion of law no. 8:

8. The value of the business is the net book value of the business inasmuch as the life expectancy of the business is only until February, 1980.

The reason given is a non-sequitur. A business may be valued by using one or more of the following approaches: (1) asset value; (2) capitalization of earnings; (3) market value. When using the asset value approach, one may use (a) book values or (b) reproduction values or (c) liquidation values. P. HUNT, C. WILLIAMS, & G. DONALDSON, BASIC BUSINESS FINANCE, TEXT AND CASES, (4th ed. 1971).

Book values are generally not reliable standards of actual current values because, *inter alia,* the book generally carries inventories at the lower of cost or market, and it carries fixed assets at cost less depreciation. *Id.* at 555.

In this case, the trial court was limited by the evidence to the use of the net asset value approach as determined by using book values.

We find no abuse of discretion in the trial court's refusal to appoint an appraiser. If, without the parties' agreement in advance to be bound by the appraiser's conclusions, the trial court appointed an appraiser and then at trial the parties contradicted the court's appraiser's conclusions by the testimony of their own appraisers, the trial court would be forced to choose between its appraiser and the parties' appraisers. Here, the trial court wisely avoided such a possibility.

The information made available to the court by the Husband reveals the following relevant financial information about the Economy Store:

### 1978 QUARTERLY BALANCE SHEETS

| Quarter Ending | 3-31-78 | 6-30-78 | 9-30-78 | 12-31-78 |
|---|---|---|---|---|
| Total Assets | 28,997. | 25,722. | 27,759. | 23,185.[6] |
| Total Liabilities | 12,809. | 8,974. | 9,183. | 16,313.[7] |
| Net Book Value | 16,188. | 16,748. | 18,576. | 6,872. |

### 1978 QUARTERLY PROFITS

| Quarter Ending | 3-31-78 | 6-30-78 | 9-30-78 | 12-31-78 |
|---|---|---|---|---|
| Sales | 92,937. | 88,442. | 86,928. | 78,655. |
| Cost of Sales | 74,251. | 69,756. | 73,151. | 72,476.[8] |
| Gross Profit | 18,686. | 18,686. | 13,777. | 6,180. |
| Expenses | 13,908. | 12,765. | 9,879. | 11,628. |
| Net Before Taxes | 4,778. | 5,921. | 3,898. | (5,448.) |

### ANNUAL PROFITS

| Calendar Year Ending | 1975 | 1976 | 1977 | 1978 |
|---|---|---|---|---|
| Sales | 106,916. | 347,033. | 333,068. | 346,961. |
| Gross Profit | 19,226. | 56,450. | 70,909. | 57,328. |
| Net Before Taxes | 3,576. | 9,104. | 17,167. | 9,149[9] |

---

[6] On the balance sheet, the retail inventory is listed as $18,057.98 and the liquor inventory is listed as $3,443.98. On the income and expense statement the respective figures are $16.389.82 and $5,112.14.

[7] Here, for the first time, the $5,000 owed to Husband's mother was entered as a note payable.

[8] The 1978 beginning inventory was $23,434.27. Its ending inventory was $21,501.96. The reduction was $1,932.31.

[9] The 1978 income and expense statement shows the annual net to be $9,148.96. The 1978 tax returns show it to be $9,206.00.

This case was tried, decided, and appealed primarily as a dissolution of a partnership under HRS chapter 425 rather than as a divorce under HRS chapter 580.

Thus the court stated, *inter alia*, in its conclusions of law[10] nos. 4, 5, 6 and 7:

4. The plaintiff retired from the parties' partnership as of October, 1978.

5. The partnership agreement does not provide for retiring partners and, therefore, the Uniform Partnership Act as expounded in H.R.S. § 425-142 shall apply to plaintiff's retirement.

6. As the retiring partner under § 425-142, the Court may allow the plaintiff her interest in the partnership with interest to the date of trial of [or] 50% of the profits to the date of trial.

7. The defendant, being the partner who ran the business from plaintiff's retirement, is entitled to the partnership profit accrued since October of 1978. Plaintiff is entitled to 50% of the book value of the business as of October, 1978 plus statutory interest on that amount of 6% to the date of this order.

It may be that the family court can satisfy its obligations under HRS § 580-47 by borrowing and applying, in appropriate cases, the concepts of HRS § 425-142.[11] However, the application must be made in the context of HRS chapter 580, not HRS chapter 425, and the result must conform to the requirements of HRS § 580-47. In this case too much attention was given to HRS § 425-142 and not enough was given to HRS § 580-47.

For example, the fact that Wife was not involved in the partnership business after October 1, 1978, or thereabouts, whereas Husband continued to be involved in it, are factors to be taken into account when deciding what portion of its earnings and value should be awarded to Wife under HRS § 580-47. Whether her non-

---

[10] Except for a few changes, the court adopted the findings and conclusions submitted by Husband's counsel.

[11] HRS § 425-142 provides in relevant parts as follows:

[§ 425-142] *Rights of retiring or estate of deceased partner when the business is continued.* When any partner retires ... he ... shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option ... the profits attributable to the use of his right in the property of the dissolved partnership. ...

involvement qualified as a retirement under HRS § 425-142 is not relevant to the issues in the case.

Moreover, the trial court did not award to Wife that which it, in conclusions of law nos. 5, 6, and 7, had said she was entitled to. The trial court used a puzzling five-step process in its attempt to apply HRS § 425-142:

1. It took the December 31, 1978, net book value of $6,871.78 and subtracted the amount of the partners' drawings for 1978 of $7,966.98[12] and found that the partnership had a "negative book value" of $1,095.20.[13]

2. Then it turned to 1978's net profits before taxes of $9,206, subtracted $3,631 for income taxes and concluded that the net profit for 1978 was $5,575. It noted that Wife was entitled to one-half ($2,787.50) but that she already drew $3,514.60 and concluded that she owed the partnership the $727.10 difference.[14]

3. Then it took the figure of $311,134.89 (which it referred to as the "Total Inventory Available"[15] in 1978), divided this figure by 12 and referred to the $25,927.90 result as the "Average Per Month." It multiplied this latter figure by .165 (which it referred to as the "actual gross profit margin" for the year 1978) and the $4,278.10 result was identified as the "parties' average profit." It indicated that Wife was entitled to $1,411.95 (one-half of $4,278.10 less the $727.10 she was overdrawn) plus $70.60 (interest at 6 percent).

4. Then it noted that Wife's December 31, 1978, capital account before 1978 drawings was $4,660.40, subtracted Wife's

---

[12] Husband had drawn $4,452.38; Wife had drawn $3,514.60.

[13] Fortunately, the product of this clearly erroneous finding was not used in the subsequent computations.

[14] This is the first of two times the court subtracted Wife's $3,514.60 drawings from an award to her.

[15] According to the lower court, the "total inventory available" was the total of the $23,434.27 beginning inventory and the $287,700.62 cost of inventory purchased during 1978.

1978 drawings of $3,514.60 and indicated that she was entitled to the difference ($1,145.80).[16]

5. It awarded to Wife $2,557.75 ($1,411.95 plus $1,145.80) and apparently neglected to award her the $70.60 interest. More succinctly stated, the lower court awarded Wife:

| | |
|---|---|
| One-half of the 1978 net profit after taxes reduced by her 1978 drawings | ($ 727.10) |
| One-half of one month's gross average profit (as defined by the court) | $2,139.05 |
| Wife's capital account reduced by her 1978 drawings | $1,145.80 |

The trial court's accounting principles and methods are clearly erroneous. The combination of the trial court's erroneous conclusion that this case should be decided under HRS chapter 425, rather than under HRS chapter 580, together with its use of clearly erroneous accounting principles and methods in finally dividing and distributing the major asset of the parties causes us to hold that the trial court has manifestly abused its wide discretion in this matter.

Reversed and remanded for a new trial.

*Mark T. Honda (Richard L. Rost* with him on the briefs) for plaintiff-appellant.

*Thomas R. Cole* for defendant-appellee.

---

[16] This is the second time the court subtracted Wife's $3,514.60 drawings from an award to her.